UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROMEO SUTTON,

                Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**MEMORANDUM & ORDER**
23-CV-01392 (HG)

**HECTOR GONZALEZ**, United States District Judge:

In this appeal brought pursuant to the Social Security Act, 42 U.S.C. § 405, Plaintiff Romeo Sutton challenges the final determination of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits. The parties have filed cross-motions for a judgment on the pleadings. ECF No. 8 (Plaintiff's Motion); ECF No. 10 (Commissioner's Motion). For the reasons set forth below, the Court grants the Commissioner's motion and denies Plaintiff's motion.

## STANDARD OF REVIEW

When deciding an application for benefits, a Social Security Administration administrative law judge ("ALJ") must follow a five-step process, outlined in the Code of Federal Regulations, *see* 20 C.F.R. § 404.1520(a)(4)(i)–(v), to determine whether a claimant is disabled. *See Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022) (detailing five-step process and associated burden-shifting).[1] When a plaintiff challenges an ALJ's decision as unsupported by substantial evidence, as Plaintiff does here, the Court must "conduct a plenary review of the administrative record" and determine "whether the ALJ applied the correct legal standards and whether the

---

[1] Unless noted, case law quotations in this Order accept all alterations and omit internal quotation marks, citations, and footnotes.

ALJ's determination is supported by substantial evidence." *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022).

"The substantial evidence standard is a very deferential standard of review—even more so than the clearly erroneous standard." *Schillo*, 31 F.4th at 74.  But the standard is "not merely hortatory:  It requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022).  The Court is therefore "required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Schillo*, 31 F.4th at 74.  Once an ALJ has made findings of fact, however, the Court "can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Id.* (emphasis in original).  Put another way, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.*  Although an ALJ is not required to "reconcile[]" "every conflict in [the] record," the ALJ must describe "the crucial factors in any determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).

## **DISCUSSION**

Plaintiff worked as a sanitation worker for 20 years and claims that he stopped working in May 2018 because of several ailments detailed in his November 2020 "Disability Report," including a "left shoulder injury," "severe sleep apnea," and "spinal disease." [2]  *See* ECF No. 7 at 41–42, 219, 254 (Administrative Record, referred to herein as "AR").[3]  Plaintiff attempted to address some of these alleged ailments with his primary care physicians, Dr. Gary Becker and

---

[2]    Plaintiff testified that he took regular retirement on May 2018, rather than disability retirement.  ECF No. 7 at 41.

[3]    Citations to ECF cite to the pages assigned by the Electronic Case Files System. Citations to AR cite to the pages assigned by the Administrative Record.

Dr. Marvin Becker, while he was still working. First, to address the sleep apnea, Plaintiff underwent sleep studies in 2014 and 2015 under the direction of Dr. Gary Becker. AR at 374, 380. Thereafter, in June 2016, Plaintiff visited an orthopedic clinic to address pain in his right elbow and shoulder as a result of lifting a heavy bag while working. AR at 358. Although Plaintiff was unable to work for three months, following a course of treatment, including physical therapy, Plaintiff was cleared to return to work in August 2016. AR at 357.

About nine months after the May 2018 onset date, Plaintiff began to see numerous healthcare professionals to address medical conditions unrelated to his claimed disabling impairments. He saw Dr. Marvin Becker in February, April, and June of 2019 regarding issues including, among other things, asthma, high cholesterol, cardiac testing, abdominal discomfort, gastroesophageal reflux disease ("GERD"), and his vitamin B12 levels. AR at 450–55, 511–26 . In September 2019, Plaintiff went to the Queens World Trade Center Health Program for claimed exposure to toxins at Ground Zero. AR at 371. Plaintiff had several more visits to this clinic in 2019 for medical issues focused primarily on respiratory conditions, sleep apnea, and GERD. *See, e.g.*, AR at 396, 398.[4]

In February and April 2020, Plaintiff again visited Dr. Marvin Becker. These visits do not appear to have been related to the disabling impairments. *See generally* AR at 456, 492. Then, in August of that same year, Plaintiff visited Dr. Igor Stiler, a neurologist. During that visit, Plaintiff reported several conditions, including neck, back, and shoulder pain. AR at 408. Dr. Stiler's assessment noted that Plaintiff presented with cervical and lumbar radiculopathy (colloquially referred to as a pinched nerve) and bilateral shoulder strain. AR at 409. He recommended that Plaintiff "have x-rays of the cervical spine, lumbar spine and both shoulders";

---

[4]  Plaintiff also had a follow-up telephonic visit with a doctor from the clinic in November 2020, where he reported the same medical issues. AR at 272–73.

that he "begin physical therapy, stretching exercises, range of motion exercises and occasional anti-inflammatories with daily stretch routines"; and come in for a follow-up visit a month later. *Id*. Based on the Administrative Record, it does not appear that Plaintiff had a follow-up visit with Dr. Stiler. After his visit with Dr. Stiler, Plaintiff did undergo the recommended x-rays, AR at 410–11, and began attending physical therapy sessions, AR at 413–25.

Plaintiff apparently did not visit his treating physician Dr. Marvin Becker again until March 2021—almost a year after his previous visit to see Dr. Marvin Becker. Dr. Marvin Becker's notes of that visit appear to focus on Plaintiff's complaints of asthma and shoulder pain. AR at 460. The visit also included cardiac testing, among other tests. *See*, *e.g.*, AR at 483. Also in March 2021, Plaintiff was examined by consultative examiner Dr. Grace Bynoe in connection with his disability claim. AR at 428. During that examination, Plaintiff complained of pain in the neck, lower back, right knee, left shoulder, and right big toe, as well as hand soreness. *Id.* at 428–29. Dr. Bynoe concluded that Plaintiff had "mild limitations for heavy lifting, carrying, for prolonged walking . . . prolonged standing . . . repetitive stair climbing, crouching, bending, and kneeling." AR at 432. According to Dr. Bynoe, Plaintiff had "no limitations for seeing, hearing, speaking, or handling objects." *Id*. State agency medical consultant Dr. G. Feldman further assessed Plaintiff's medical records in March 2021 and concluded that Plaintiff was "not disabled" and was capable of conducting activities that required light exertion. AR at 55–56.[5]

Plaintiff visited Dr. Marvin Becker again in May 2021 on two separate occasions, and, as with the March visit, the focus of these visits appeared to be related to his shoulder issues. *See*, *e.g.*, AR at 462, 465. Several months later, in November 2021, Dr. Gary Becker filled out a two-page form questionnaire—"Medical Assessment of Ability to Do Work-Related Activities"—in

---

[5] In June 2021, state agency medical consultant Dr. C. Li concurred with Dr. Feldman's assessment. AR at 68–69.

which he gives a diagnosis of "shoulder pain, sciatica [secondary] to [a] herniated disk, and a torn meniscus," with symptoms of "low back pain, [right knee] pain . . . [and] loss [of] range [of] motion in [the] shoulder." AR at 528. Among other things, the form notes that Plaintiff was limited to lifting 10 pounds, standing or walking for less than two hours in an eight-hour period, and sitting for less than four hours during that same period. *Id*. Notably, the form filled out by Dr. Gary Becker provides scant evidentiary support for the opinions he offers.

In reaching her conclusion that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), the ALJ considered an extensive record, including Plaintiff's treatment history and the assessments of Plaintiff's treating physicians, State agency consultants Dr. Feldman and Dr. Li, and consultative examiner Dr. Bynoe. AR at 20. The ALJ found Dr. Gary Becker's opinion to be "somewhat persuasive," Dr. Bynoe's opinion to be "generally persuasive," and the opinions of Dr. Feldman and Dr. Lie to be "not entirely persuasive." AR at 24–25. In challenging the ALJ's conclusion, Plaintiff's core argument is that the ALJ should have given more weight to the treating physician's (Dr. Gary Becker's) opinion and therefore erred by concluding that Plaintiff had the residual functional capacity to perform more tasks than Dr. Gary Becker had opined that Plaintiff could perform because Dr. Gary Becker's "opinions are utterly inconsistent with a finding of a capacity for sustained work at any exertional level." ECF No. 8-1 at 13–14. Plaintiff claims that the ALJ's reliance on Dr. Bynoe's assessment is misplaced because "Dr. Bynoe's assessment is vague and non-specific with respect to the plaintiff's physical limitations." *Id.* at 14.

The Court disagrees. The ALJ found that Dr. Gary Becker's opinion "is only somewhat persuasive in support of the [Plaintiff's] residual functional capacity." AR at 25. After noting that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ explained that Plaintiff's "statements concerning the intensity,

5

persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR at 25. For example, the ALJ noted that Plaintiff "reports activities of daily living . . . that are consistent with an ability to engage in light work activity." AR at 25. This conclusion was consistent with Dr. Bynoe's evaluation, as well as other evidence. *See generally*, AR at 428–32.

The ALJ therefore did not err by declining to adopt functional limitations that matched Dr. Gary Becker's opinion. The Social Security Administration has adopted regulations providing that, for all applications for benefits submitted after March 27, 2017, the Administration will no longer apply regulations commonly referred to as the "treating physician rule," which presumptively afforded controlling weight to a treating physician's opinion. *Schillo*, 31 F.4th at 70–71. Since the treating physician rule has now been repealed, "the agency 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s).'" *Loucks v. Kijakazi*, No. 21-1749-cv, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022) (quoting 20 C.F.R. § 404.1520c(a)).

In this instance, the ALJ reasonably determined that based on the entirety of the record, including Plaintiff's own hearing testimony, Dr. Gary Becker's opinion "overstates the extent of the [Plaintiff's] exertional limitations for standing, sitting and walking." AR at 25. *See Tibbles v. Comm'r Soc. Sec.*, No. 22-1127-cv, 2023 WL 3477127, at *2 (2d Cir. May 16, 2023) (affirming ALJ's assessment of plaintiff's residual functional capacity that discounted treating physician's opinions because they were "not fully supported by or consistent with the other evidence in the record").

The ALJ's decision not to afford controlling weight to Dr. Becker's opinion obviated the need to tailor the residual functional capacity determination to his opinion. An ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion." *Schillo*, 31 F.4th at 75.

6

However, once an ALJ has decided not to give any medical opinion controlling weight, "the ALJ's [residual functional capacity] conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Id.* at 78. And, of course, an ALJ may assign significant weight to the opinion of a physician retained by the Social Security Administration where, as here, that physician's opinion is "consistent with the record as a whole." *Saul v. Cunningham*, No. 21-cv-3787, 2022 WL 17415089, at *6 (E.D.N.Y. Dec. 5, 2022) (affirming propriety of ALJ's residual functional capacity determination that relied on physician retained by Social Security Administration where, unlike this case, the physician did not even examine plaintiff); *see also Peets v. Kijakazi*, No. 21-3150-cv, 2022 WL 17725391, at *1 (2d Cir. Dec. 16, 2022) ("That an ALJ does not give controlling weight to a particular medical opinion is not a basis for second-guessing the ALJ's conclusions.").

Any remaining arguments raised by Plaintiff are without merit. In considering the record as a whole, the ALJ's opinion is amply supported by substantial evidence. *See Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (explaining that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether substantial evidence supports *the ALJ's decision*" (emphasis in original)). The Court must therefore affirm the decision of the Commissioner.

## **CONCLUSION**

For the reasons set forth above, the Court GRANTS the Commissioner's motion for judgment on the pleadings, *see* ECF No. 10, and DENIES Plaintiff's motion for judgment on the pleadings, *see* ECF No. 8. The Clerk of Court is respectfully directed to enter judgment and to close this case.

    SO ORDERED.

                                         */s/ Hector Gonzalez*
                                         HECTOR GONZALEZ
                                         United States District Judge

Dated: Brooklyn, New York
        June 6, 2024